NUNZIATA VALENTE ET AL. *vs.* ISADORE OPPER.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The defendant purchased plaintiff's real estate which was heavily incumbered, under an agreement that the major portion of the purchase price should not be paid until the plaintiff had discharged certain of the incumbrances, and that, for the plaintiff's protection, the warranties in the deed of conveyance should be suspended for three years. Before the expiration of this period, the defendant was obliged to pay off the second and third mortgages to prevent the loss of his title by foreclosure. *Held* that he was entitled to credit these amounts upon the purchase price; there being no merit to the plaintiff's claim that the defendant's sole remedy under the agreement was an action for breach of warranty at the end of three years.

One of the incumbrances which the plaintiff agreed to remove was an assignment of rents to P, who was to pay the interest on the second mortgage. P also held the third mortgage. When the defendant discharged the third mortgage—having previously paid the second—it was arranged between him and P that, as part payment, P should retain the rentals which he had collected under the assignment subsequent to the transfer of the title to the defendant. *Held* that the plaintiff had no cause to complain of the transaction, since there was nothing in the agreement between the plaintiff and the defendant to alter the general rule that rents belong to the purchaser of real estate.

Claims are not entitled to consideration in this court unless made in the court below.

Argued October 28th—decided December 1st, 1924.

Valente *v.* Opper.

ACTION to recover the balance alleged to be due on the purchase price of certain real estate, brought to and tried by the Superior Court in New Haven County, *Avery, J.;* facts found and judgment rendered for the plaintiff Mary Elizabeth Valente to recover $2,267.66 only, from which the plaintiffs appealed. *No error.*

The court found these facts: On March 12th, 1917, Nunziata Valente sold to the defendant a tract of land with buildings thereon for $45,000, by warranty deed excepting from the warranties a first mortgage of $25,000 to the New Haven Savings Bank, which the grantee assumed and agreed to pay as a part of the purchase price, also excepting certain leases from the warranties, which in no way affect this case. There remained $20,000 of the purchase price to be provided for.

In addition to the incumbrances to the New Haven Savings Bank, and the leases to tenants above referred to, the property was subject to six incumbrances as follows:—

A. A mortgage for $11,500 to Isic Kaufman and Benjamin Sarason, dated October 15th, 1914, and duly recorded.

B. A mortgage for $5,000 to Angelo Porto, dated February 19th, 1915, and duly recorded. (This mortgage was made to secure an indebtedness due to said Porto, the amount of which was not determined at the time of this sale of the property. The amount of this indebtedness was finally determined in an action brought to secure an accounting in the Superior Court for New Haven county, and as a result the court found that on June 4th, 1918, Nunziata Valente was indebted to Porto in the sum of $13,877.40, and rendered judgment for Porto for that amount with costs taxed at $51.)

C. An assignment of rents to Angelo Porto, dated February 10th, 1915, and duly recorded.

D. An attachment claiming $1,200 damages in favor of Angelo Porto, dated February 20th, 1915, and duly recorded.

E. An attachment claiming $300 damages in favor of John D. Kelley, dated July 1st, 1915, and duly recorded.

F. An attachment claiming $1,300 in favor of William Cohen, of Stamford, dated April 20th, 1916, and duly recorded.

The plaintiff, Nunziata Valente, and the defendant, Isadore Opper, on March 12th, 1917, entered into the following agreement, the terms of which are given in so far as seems necessary:—

### EXHIBIT A.

"This agreement made . . . this twelfth day of March, 1917, by and between Nunziata Valente as party of the first part, and Isadore Opper . . . as party of the second part, witnesseth:

"Whereas, said Nunziata Valente has this day sold and conveyed to said party of the second part a certain piece or parcel of land. . . .

"And whereas said property is on this date subject to mortgages amounting to $25,000, to the New Haven Savings Bank, and certain leases, all of which are excepted from the covenants of warranty in said deed above referred to, and further subject to the following encumbrances: [These incumbrances are those described above in A, B, C, D, E and F].

"And said Nunziata Valente has by deed warranted said property against the said encumbrances,

"Now, therefore, said party of the first part . . . in consideration of . . . does hereby agree . . . that he [she] will within three years from this date cause the six encumbrances above enumerated to be released and discharged from record. . . .

"In consideration of the promises of the party of the first part, the party of the second part agrees that he will assign and transfer to said party of the first part, or to any other person whom he [she] may direct, a mortgage now held by said party of the second part, of the face value of $14,366, executed by one Angelo Porto, dated October 24, 1916, and secured by a mortgage deed of property on Lafayette Street.

"This transfer is to be made when the mortgage to Isic Kaufman and Benjamin Sarason and the mortgage and assignment of rents to Angelo Porto, all above recited, are released from the land records of the town of New Haven. . . .

"Said party of the second part hereby agrees that he will not begin any law suit against said party of the first part upon any of the covenants of the warranty deed herein referred to, or on any of the provisions of this agreement, within a period of three years from this date.

"And it is further agreed that said party of the second part will pay to said party of the first part interest on the sum of $16,500 from this date until the date of the assignment of the Porto mortgage of $14,366, at the rate of six per cent per annum."

The court finds that it was the intent of the parties that, during this period, Nunziata Valente would have sufficient opportunity to determine the amount due from her to Angelo Porto, secured by the mortgage to said Porto, either by agreement or litigation.   It was agreed that when the time arrived for the final payment to be made by the transfer of said mortgage, there was to be an accounting and a cash adjustment between the parties, based on whether the amount then due on this mortgage  amounted to more or less than the balance then due from Opper to Nunziata Valente upon the agreed purchase price of $45,000.   This accounting and

cash adjustment was provided for by agreement of the parties because the amount of the final payment could not be ascertained in advance for the following reasons:—

A. The mortgage to Angelo Porto (described above) secured an undetermined amount.

B. Under the terms of the assignment of rents to Angelo Porto, the rents accruing from the property, which rents belonged to Opper from the date of the sale, were to be applied upon the debt secured by the Kaufman and Sarason mortgage. The total purchase price which Opper and Nunziata Valente agreed upon for the property was $45,000. Opper was entitled to be reimbursed upon the accounting for so much of his rents as had been so applied to said Kaufman and Sarason mortgage, as would be in excess of $45,000 when added to the other payments theretofore made by him upon the agreed purchase price.

C. The amount which would have to be paid to release the attachments in favor of Angelo Porto, John D. Kelley and William Cohen could not be ascertained in advance.

At the time of the original transfer of the property, the defendant paid to the plaintiff $2,100 in cash. Subsequently, the two attachments of Kelley and Cohen, amounting to $1,600, were paid off in accordance with the terms of the agreement by funds furnished by the defendant, being one half of the face value of the attachments and amounting to $800. At the time of the transfer of the property on March 12th, 1917, there was a tax to the city of New Haven for the year 1916, which had not been paid, but the incidence of which tax was fixed upon the plaintiff who was the owner of the property at the time the assessment was levied. The defendant on May 16th, 1918, and after a lien had been filed by the city of New Haven, paid $654.61 to dis-

charge this tax upon his property which should have
been paid by the plaintiff.   The property at the time
of the execution of Exhibit A was fully rented and the
monthly rentals thereof amounted to $355, and from
March 12th, 1917, the date upon which Exhibit A was
signed, until March 1st, 1918, said rents were collected
by Porto.   Prior to March 12th, 1917, Porto had col-
lected rents for a term of nearly three years, and had,
up to that time, paid interest, taxes and instalments on
the Kaufman and Sarason mortgage, using the rents for
that purpose.   After March 12th, 1917, Porto made no
payments on the Kaufman and Sarason mortgage and
failed to pay interest or taxes, and on March 1st, 1918,
Porto had in his hands $2,680.80 of rentals.   Commenc-
ing with March 1st, 1918, the defendant collected the
rents of the property and continued to do so thereafter.
Nunziata Valente did not discharge or otherwise take
care of the mortgage to Kaufman and Sarason, who
brought suit to foreclose the same and secured judg-
ment.   On November 4th, 1918, the day before the
redemption day, the defendant paid, to protect his
property, the amount of this judgment, being $5,135.84.
After Porto recovered the judgment in the Superior
Court on the accounting to determine the amount due
him on the debt secured by the mortgage, the attorneys
for Porto threatened foreclosure of the Porto mortgage,
and the defendant, on or about February 4th, 1919, in
good faith to protect his property and to prevent fore-
closure after negotiations with Porto, obtained a release
of the Porto mortgage.   At the time of this payment,
to wit, on February 4th, 1919, Porto had in hand the
sum of $2,680.80 from rents which he had been holding
since March 1st, 1918.   The terms upon which this re-
lease was obtained were the payment of $2,628.75 in
cash, the transfer to Porto of a mortgage of $6,000 which
was accepted by him as cash, and the charging of Porto

with $2,680.80 on account of rents collected by him under his assignment of rents and retained by him in his own hands, which amount was credited upon the indebtedness of the plaintiff, Nunziata Valente, to Porto. The defendant claims that the $20,000 (being the amount of the purchase price over and above the amount of the mortgage to the New Haven Savings Bank), which was to be paid by the defendant to. Nunziata Valente for the purchase of the property, has been discharged in full as follows, as to the principal sum:—

A. Cash at time of sale . . . . . . . . . . . . . . . $ 2,100.00
B. Cash on release .of Kelley and Cohen
    attachments . . . . . . . . . . . . . . . . . . .    800.00
C. Cash on payment of back taxes . . . . . .    654.61
D. Cash on redemption of Kaufman and
    Sarason mortgage . . . . . . . . . . . . . . .  5,135.84
E. (1) Cash paid on discharge of Porto
    mortgage . . . . . . . . . . . . . . . . . . . . .  2,628.75
    (2) Mortgage transferred from de-
    fendant to Porto and accepted as
    cash . . . . . . . . . . . . . . . . . . . . . . . .  6,000.00
    (3) Rents collected by Porto and due
    to the defendant which were charged
    against Porto in the settlement and
    credited by him upon the indebted-
    ness due to him from the plaintiff,
    Nunziata Valente . . . . . . . . . . . . . . .  2,680.80

                                            $20,000.00

The agreement (Exhibit A) provided that Opper should pay the plaintiff Nunziata Valente interest on $16,500 from the date of the agreement until the date when the mortgage which it was proposed Opper should assign as final payment was assigned. That assignment was never made, for the reason that the defendant dis-

charged the principal indebtedness when he made the final payment and settlement with Porto on February 4th, 1919.

The plaintiff is entitled to interest on $16,500 from March 12th, 1917, to February 4th, 1919, amounting to . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ 1,877.56
From this should be deducted:

   A. Interest on $654.61 from May 16th, 1918 (the date when Opper paid the back taxes on the property in that sum), to February 4th, 1919, amounting to . . . . . . . . . . . . . . . . . . . $28.14

   B. Interest on $5,135.84 from November 4th, 1918 (the date when Opper paid the Kaufman and Sarason mortgage in that sum), to February 4th, 1919, amounting to . . . . . . . . . 77.04

Sum of above two items . . . . . . . . . . . . . . .$　105.18

Which deducted, leaves a balance of . . . . . .　1,772.38
   the total interest due on February 4th, 1919.

Upon this should be computed interest from February 4th, 1919, to date, amounting to . . . . . . . . . . . . . . . . . . . . . .　495.28

Making a total amount due from the defendant to the plaintiff of . . . . . . . . .$ 2,267.66

On July 27th, 1917, the plaintiff Nunziata Valente assigned her claim against the defendant to the extent of $10,000, to Mary Elizabeth Valente, her daughter.

Upon the above facts, the court reached the conclusion that the plaintiff was entitled to interest computed as set out in the foregoing finding of facts, and amounting, at date of judgment, to $2,267.66, and rendered

judgment for the plaintiff Mary Elizabeth Valente to recover that amount.

*Robert J. Woodruff* and *Claude B. Maxfield,* for the appellants (plaintiffs).

*Samuel A. Persky,* for the appellee (defendant). ·

Curtis, J.   The plaintiff Nunziata Valente sold a tract of land to the defendant for $45,000, upon which the plaintiff, by the assumption of a $25,000 mortgage and a cash payment of $2,100, had paid those amounts on the purchase price, thus leaving $17,900 unpaid. There existed at the time of the sale, an assignment of the rents from the property to one Angelo Porto, two mortgages, and three attachments on the property, all duly recorded.   As to these incumbrances, the grantee was protected by the warranties in the deed.   At the time of making the deed, the parties entered into a contract (Exhibit A).   The construction placed upon Exhibit A by the court appears in the above statement of facts.

Among the terms of the contract, it was agreed that the plaintiff Nunziata should discharge these incumbrances in three years, and that the defendant would not bring any action on any covenant of warranty or on the contract during three years.

Before the expiration of three years from the date of the transfer of the property, Kaufman and Sarason began the foreclosure of their second mortgage, and the amount due was found to be $5,135.84, and November 5th, 1918, fixed as the day of redemption.   November 4th, 1918, the defendant paid that mortgage and charged Nunziata with the amount paid as a payment on the purchase price.   The plaintiff claims that, as the contract gave her three years to discharge this incum-

brance, the court improperly ruled that the contract did not deprive the defendant of the right to discharge the mortgage under the circumstances, protect his property and credit the amount paid as a part of the purchase price.

The situation presented by the failure of Nunziata to discharge this mortgage before the day of redemption, compelled the defendant to protect his property; and as he did so by paying an indebtedness of Nunziata that she was, under the warranty of her deed to him, obligated to pay, this payment by the defendant was properly credited by him as a payment on the purchase price.

It is to be borne in mind that this action is one begun by Nunziata before the three-year term provided for in Exhibit A had expired.

Nunziata claims that Exhibit A gave the defendant as his exclusive relief, when an incumbrancer threatened a foreclosure of the land he had bought, a right of action, at the expiration of three years from March 12th, 1917, against her on her covenant of warranty or on her breach of contract. Such a claim as to the meaning of Exhibit A under all the surrounding circumstances is so unreasonable as not to be sustainable.

In the same way, the defendant's payment of the mortgage to Angelo Porto was properly credited as a payment on the purchase price. The assignment of error, that the defendant paid more to discharge the Porto mortgage than the face of the mortgage warranted, cannot be considered, because no such claim was made in the court below and ruled upon.

The construction placed upon the contract (Exhibit A), that in view of all the surrounding circumstances the rent from the premises transferred belonged from the date of the transfer to the grantee, the defendant, was correct. Normally the purchaser of property is

entitled to the rents, and where the rents had been previously assigned, as in this case, to a third party to collect and expend for the grantor, a transfer of the property with an agreement by the grantor to discharge such assignment, and a right of action given against the grantor on a warranty against such assignment, presents a situation which could not legally or logically be held  to import that the rents belonged to the grantor after the conveyance to the purchaser.

If Nunziata failed to compel Angelo Porto to apply the rents collected by him on the debt secured by the Kaufman and Sarason mortgage, as he had agreed to do, and the grantee arranged with Porto to credit the rents collected on a mortgage by Nunziata on the property which the grantee was compelled to pay, such proceeding was not questionable and the grantor cannot complain because such rents collected were not treated as her money.

The construction of the contract by the court, as in no way prohibiting the course of conduct followed by the defendant in dealing with the situations created by the failure of Nunziata to discharge incumbrances when they became a menace to the possession and control of the property, was correct.

It follows that the statement of account made by the court, as set forth in the statement of facts above, was correct, and the judgment therefrom was properly rendered.

There is no error.

In this opinion the other judges concurred.